**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

SOUTHERN-OWNERS
INSURANCE COMPANY,

    Plaintiff,

v.                                                      Case No. 3:18-cv-1305-J-32MCR

MARONDA HOMES, INC. OF
FLORIDA, JROD PLASTERING
LLC, JOSEPH MANALANSAN, and
CHAMROEUN MANALANSAN,

    Defendants.

_____

**O R D E R**

This declaratory judgment action is before the Court on Defendants Maronda Homes, Inc. of Florida and JROD Plastering LLC's motions to dismiss for lack of subject matter jurisdiction. (Docs. 15, 41). Southern-Owners Insurance Company filed responses (Docs. 25, 42), and Maronda filed a reply (Doc. 30). On January 15, 2019, the Clerk entered default against Defendants Joseph and Chamroeun Manalansan under Fed. R. Civ. P. 55(a). (Docs. 20, 21).

**I.    BACKGROUND**

On August 23, 2013, the Manalansans purchased a home built by developer and general contractor Maronda. (Doc. 51-2 at 2). At some time

around the fall of 2018, they noticed damage on the home's exterior stucco finish, which subcontractor JROD had installed. (Id.). On September 18, 2018, counsel for the Manalansans sent Maronda a Chapter 558 Notice of Construction Defects ("§ 558 Notice"), explaining that estimated repairs to the property would cost approximately $57,480.75. (Id. at 2-3). The estimate did not include any unforeseen or unknown damages that may be encountered during the repair process. (Id. at 3).

On November 5, 2018, Southern-Owners filed this declaratory judgment action against Maronda, JROD, and the Manalansans, seeking a determination regarding whether there is coverage for the Manalansans' stucco damage under Policy No. 112322-78677882, a commercial general liability insurance policy issued to JROD. (Doc. 1; Doc. 51 ¶ 24). The policy was effective January 6, 2011 and was reissued four times, providing coverage through January 6, 2016. (Doc. 51 ¶ 24; Docs. 51-6, 51-7, 51-8, 51-9). The policy named JROD as the insured and Maronda as an additional insured. (Doc. 51 ¶¶ 31-32). On June 11, 2019, Southern-Owners filed an amended complaint.[1] (Doc. 51).

Southern-Owners alleges that this Court has diversity jurisdiction under 28 U.S.C. § 1332. (Doc. 51 ¶¶ 2-4). Maronda and JROD ("Defendants") do not

---

[1] The amended complaint added all policies issued by Southern-Owners to JROD as exhibits and did not change the counts and substance of the six-count complaint. (Doc. 43 at 1).

2

dispute that the parties are diverse, but contest that Southern-Owners has sufficiently alleged that the amount in controversy exceeds $75,000. Alternatively, should the Court find that it has jurisdiction, Defendants request that the Court decline jurisdiction and dismiss the case because four parallel claims are currently pending in the Circuit Court for the Fourth Judicial District in and for Duval County, Florida, seeking the same declaratory determination regarding the same policy against the same Defendants. (Doc. 15 at 2-3; Doc. 41 at 4).

## II. LEGAL FRAMEWORK

To invoke a federal court's diversity jurisdiction, a plaintiff must allege that the parties are of diverse citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. "Federal courts are courts of limited jurisdiction," Burns v. Windsor Ins., Co., 31 F.3d 1092, 1095 (11th Cir.1994), which determine whether subject matter jurisdiction exists "as of the time the Complaint was filed," Baggett v. First Nat. Bank of Gainesville, 117 F.3d 1342, 1352 (11th Cir. 1997). See also GMAC Ins. Co. Online, Inc. v. Shaw, No. 613CV1826ORL28DAB, 2014 WL 12618188, at *3 (M.D. Fla. Feb. 21, 2014), (amount in controversy must exist "at the time of the commencement of the action" for diversity jurisdiction), report and recommendation adopted, No. 613CV1826ORL28DAB, 2014 WL 12621475 (M.D. Fla. Mar. 24, 2014).

"When a plaintiff seeks . . . declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective." Federated Mut. Ins. Co. v. McKinnon Motors, LLC, 329 F.3d 805, 807 (11th Cir. 2003) (quoting Cohen v. Office Depot, Inc., 204 F.3d 1069, 1077 (11th Cir. 2000)). "[W]here jurisdiction is based on a claim for indeterminate damages, the . . . 'legal certainty test' gives way, and the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum." Id. "A conclusory allegation . . . that the jurisdictional amount is satisfied, without setting forth the underlying facts supporting such an assertion, is insufficient to meet the [plaintiff's] burden." Bradley v. Kelly Servs., Inc., 224 F. App'x 893, 895 (11th Cir. 2007) (alterations in original).

When an insurer seeks a declaration that it has "no duty to defend or indemnify its insured in an underlying lawsuit," the amount in controversy is determined by examining the following factors: "(1) the coverage limits under the insurance policy; (2) the amount of damages sought in the underlying lawsuit; and (3) the pecuniary value of the obligation to defend the underlying lawsuit." Clarendon Am. Ins. Co. v. Miami River Club, Inc., 417 F. Supp. 2d 1309, 1316 (S.D. Fla. 2006) (citations omitted).

4

## III. ANALYSIS

Southern-Owners alleges that the amount in controversy requirement is satisfied:

> 3. The amount in controversy here exceeds $75,000 because, in an insurance coverage action, the amount in controversy is the "value of the object of litigation from the plaintiff's perspective." *See QBE Ins. Corp. v. Surfside Properties & Mgmt., Inc.*, 2016 WL 6650713, at *1 (M.D. Fla. Nov. 10, 2016). "When an insurer seeks a declaration that it has 'no duty to defend or indemnify its insured in an underlying lawsuit,' the amount in controversy is determined by examining the following factors: '(1) the coverage limits under the insurance policy; (2) the amount of damages sought in the underlying lawsuit; and (3) the pecuniary value of the obligation to defend the underlying lawsuit.'" *Id.* (quoting *Clarendon Am. Ins. Co. v. Miami River Club, Inc.*, 417 F. Supp. 2d 1309 (S.D. Fla. 2006)).
>
> 4. Here, the policy limits are $1,000,000 per occurrence, the underlying claimants are seeking at least $57,480.75, and defense costs are being incurred. Thus, the amount in controversy is met. *See* Composite Exhibit "A."

(Doc. 51 ¶¶ 3-4).

By contrast, Defendants argue that the amount in controversy has not been established, as the only evidentiary support attached to the amended complaint is the § 558 Notice seeking damages of $57,480.75. (Doc. 15 at 5); see Am. Sec. Ins. Co. v. Hall, No. 09-21209-CIV, 2009 WL 2215294, at *1 (S.D. Fla. July 23, 2009) (dismissing case for failure to satisfy amount in controversy where amount of underlying loss was less than the jurisdictional amount and

allegation of statutorily authorized attorney's fees was conclusory). While a settlement offer or pre-suit demand, such as a § 558 Notice, is relevant, it is not determinative of the amount in controversy. See Burns, 31 F.3d at 1097.

Defendants further contend that Southern-Owners's allegations of a $1 million policy limit and incurred defense costs are insufficient to establish jurisdiction. Courts in the Eleventh Circuit have stated that "policy limits alone are insufficient to determine the amount in controversy for insurance coverage purposes." Direct Gen. Ins. Co. v. Gay, No. 4:10CV336-SPM WCS, 2010 WL 4736906, at *3 (N.D. Fla. Nov. 15, 2010) (citing Martins v. Empire Indem. Ins. Co., No. 08-60004-CIV, 2008 WL 783762, at *2 (S.D. Fla. Mar. 21, 2008) (holding that the policy limits of an insurance policy are not alone sufficient evidence to establish the amount in controversy)); Amerisure Ins. Co. v. Island Crowne Dev'rs, L.C., No. 610CV221ORL28DAB, 2010 WL 11626694, at *2 (M.D. Fla. Apr. 28, 2010) ("a showing that the policy amount exceeds $75,000 does not in and of itself establish that the amount in controversy requirement has been met because the value of the underlying claim may be for less than the policy limits"). "While a low policy limit may be relevant in showing that the monetary value of the action to the insurer does not reach the jurisdictional threshold, . . . a high policy limit does not establish a large amount in controversy for the simple reason that the underlying plaintiff's claim may be for far less than the policy limit." Emp'rs Mut. Cas. Co. v. Parker Towing Co., No. CIV.A.07-0684-

6

WS-B, 2007 WL 4577705, at *2 (S.D. Ala. Dec. 27, 2007) (citing Hartford Ins. Group v. Lou-Con, Inc., 293 F.3d 908, 911 (5th Cir. 2002) ("[I]n declaratory judgment cases that involve the applicability of an insurance policy to a particular occurrence, the jurisdictional amount in controversy is measured by the value of the underlying claim-not the face amount of the policy.")).

Despite this precedent, Southern-Owners relies on cases which have found that when the policy limit is more than $75,000, the jurisdictional threshold is met. (Doc. 25 at 3-5). Unlike here, however, additional facts supported those courts' jurisdictional findings. For instance, one court found that a policy limit of $1 million, in conjunction with estimated damages in excess of $5 million in the underlying lawsuit, satisfied the amount in controversy requirement. See Clarendon, 417 F. Supp. 2d at 1316. In another case, the insurer's notice of removal stated that the insurance policy limit was $1 million, it had already spent at least $70,000 in defense costs, and the value of the claim approached $1 million. See Macy's Fla. Stores, LLC v. Illinois Nat. Ins. Co., No. 08-21619-CIV, 2008 WL 2741132, at *3 (S.D. Fla. July 11, 2008). Yet another court found the amount in controversy was met where the policy limit was $1 million and—of great significance—the physical injuries to a three-year old girl in the underlying suit were "quite severe," which would result in a "challenging and expensive" defense. See QBE Ins. Corp. v. Surfside Props. &

Mgmt., Inc., No. 616CV831ORL31KRS, 2016 WL 6650713, at *2 (M.D. Fla. Nov. 10, 2016).

Southern-Owners relies heavily on Canopius U.S. Insurance Inc. v. Prestige General Cleaning Services, Inc., No. 14-CIV-81095, 2014 WL 6979658 (S.D. Fla. Dec. 9, 2014), in which the court found that a $53,752.72 claim for damages in the underlying suit, a $1 million policy limit, and unspecified defense costs satisfied the amount in controversy requirement. However, in Canopius, as in the other cases, an underlying lawsuit was pending at the time the insurance action commenced. By contrast, Southern-Owners asks the Court to find the amount in controversy established based on a policy of $1 million but with an underlying claim of less than $75,000 and no pending underlying lawsuit.[2] If the Court followed the reasoning of Southern-Owners, then this decision "would be authority for asserting federal jurisdiction in any declaratory judgment suit involving a liability insurance policy with applicable coverage over [the jurisdictional threshold] no matter how small the claim actually being made." Queen Ins. Co. of Am. v. Basham, 201 F. Supp. 733, 737 (W.D. Tenn. 1962). This the Court will not do. Therefore, where the only evidence

---

[2] Southern-Owners argues that the value of the claim in the § 558 Notice is the floor, not the ceiling, of damages, and it is "likely that the repair costs will ultimately be substantially higher than initially estimated." (Doc. 25 at 5-6). This argument requires the Court to engage in speculation about unforeseen damages, which it declines to do.

8

demonstrates that the value of the Manalansans' claim is substantially less than $75,000, the Court finds that the $1 million limit of JROD's policy is insufficient to meet Southern-Owners's burden of establishing that the amount in controversy requirement has been satisfied.

In addition to its argument concerning the policy limit, Southern-Owners asks the Court to factor "anticipated defense costs" into its jurisdictional analysis. (Doc. 25 at 2, 6-9). However, Southern-Owners does not allege that any underlying litigation is pending, nor does it allege a specific amount of defense costs incurred.[3] Instead, it relies on cases in which courts determine that the defense costs in pending underlying lawsuits will make up the difference and satisfy the amount in controversy requirement. See Integon Nat'l Ins. Co. v. Ben's Reliable Roofing, Inc., No. 09-CV-61300-PAS, 2010 WL 11506048, at *3 (S.D. Fla. Jan. 26, 2010) ("it is highly probable that Integon will have to expend more than $25,000 defending the action, meaning the value of this declaratory judgment action is worth more than $75,000 to Integon"); Dairyland Ins. Co. v. Chadwick, No. 8:07CV2091T30MSS, 2008 WL 912428, at

---

[3] Southern-Owners states in its response that it "has already hired the O'Hara Law Firm to defend JROD, the named insured, against the Manalansans' claim. Although the claim is in its early stages, the amount of defense costs that Southern-Owners will incur will undoubtedly cover the gap of $17,519.26." (Doc. 25 at 2, 7). Despite these statements, Southern-Owners did not provide the Court with an engagement letter, a retainer agreement, bills, or even an affidavit in support of the alleged defense costs.

9

\*3 (M.D. Fla. Apr. 1, 2008) ("in the Court's opinion, Dairyland's costs of defense for Chadwick and Kennedy could forseeably [sic] exceed $35,000 in the Underlying Lawsuit").

While there may be cases where considering anticipated defense costs might be appropriate, this case is not one of them. See GMAC, 2014 WL 12618188, at \*3 ("unsubstantiated predictions of plaintiffs' attorneys' fees are not sufficient to meet the jurisdictional requirement"); see also Amerisure, 2010 WL 11626694, at \*3 ("To reach a conclusion that these costs would push the amount in controversy above the jurisdictional threshold, especially in light of Island Crowne's general claim of $15,000 or more in damages in the underlying complaint, would require that the Court engage in impermissible speculation; an action that this Court will not take."); Dairyland Ins. Co. v. Valladares, No. 08-14152-CIV, 2009 WL 10667165, at \*2 (S.D. Fla. Jan. 15, 2009) (amount in controversy not met where plaintiff failed to substantiate assertions of defense costs with affidavits or other extrinsic evidence). Here, there was no underlying lawsuit to consider at the time the action commenced. As far as the Court is aware, no underlying lawsuit was ever filed. As Maronda correctly argues, "[t]he probable defense costs related to an active, underlying lawsuit [are] entirely different from assuming the probable defense costs related [only to] a § 558 Notice." (Doc. 30 at 7); Direct Gen., 2010 WL 4736906, at \*4 ("established

precedent does not allow for conclusory, self-serving assertions of attorney's fees in order to meet the amount in controversy threshold").

In sum, Southern-Owners has not met its burden to establish that the amount in controversy requirement has been met, and this case is due to be dismissed for lack of subject matter jurisdiction.[4]

Accordingly, it is hereby

**ORDERED:**

1. Defendant Maronda Homes, Inc. of Florida's Motion to Dismiss For Lack of Subject Matter Jurisdiction (Doc. 15) is **GRANTED**.

2. Defendant JROD Plastering LLC's Motion to Dismiss Plaintiff, Southern-Owners Insurance Company's Complaint For Declaratory Relief For Lack of Subject Matter Jurisdiction (Doc. 41) is **GRANTED**.

3. This case is **DISMISSED without prejudice** for lack of subject matter jurisdiction.

4. The Clerk shall terminate all pending deadlines and close the file.

**DONE AND ORDERED** in Jacksonville, Florida the 8th day of July, 2019.

---

[4] Because the Court has determined it lacks jurisdiction, it need not address Defendants' arguments regarding similar pending litigation in state court.

_____
TIMOTHY J. CORRIGAN
United States District Judge

sej
Copies:

Counsel of record